UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


| | | |
|---|---|---|
| ROESLEIN & ASSOCIATES, INC. and ROESLEIN ALTERNATIVE ENERGY, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:17 CV 1351 JMB |
| THOMAS ELGIN, ELGIN MEYER BIOENERGY CO. and J.S. MEYER ENGINEERING, P.C., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Thomas Elgin's ("Elgin") Motion to

Dismiss and for More Definite Statement[1] (ECF No. 29), Plaintiffs Roeslein & Associates, Inc.'s

("Roeslein") and Roeslein Alternative Energy, LLC's ("RAE") (collectively "Plaintiffs") Motion

for Leave to File Their Amended Complaint (ECF No. 40), and Defendants Elgin Meyer

Bioenergy Co.'s ("EMB") and J.S. Meyer Engineering, P.C.'s ("JSME") (collectively "Meyer

Defendants") (all Defendants collectively "Defendants") Motion to Dismiss the Complaint (ECF

No. 45). The Court heard oral argument on November 30, 2017, and the motions are fully briefed

and ready for disposition. The parties consented to the jurisdiction of the undersigned pursuant to

28 U.S.C. § 636(c). For the reasons set forth below, the Court grants in part and denies in part

Plaintiffs' motion to amend their Complaint and denies as moot Defendants' motions to dismiss

due to the filing of the amended complaint.

---

[1] For purposes of deciding the motion to amend, the Court incorporates Elgin's
arguments in his motion to dismiss as directed to Count VI.

## I.   Background

On April 18, 2017, Plaintiffs filed a Complaint, alleging misappropriation of trade secrets under the Defend Trade Secrets Act ("DSTA") (Count I), declaratory judgment of ownership of U.S. Patent Application No. 2016/0096761 entitled "Systems and Methods for Processing Organic Compounds" ("patent application") (Count II), constructive trust over the patent application (Count III), breach of the Missouri Uniform Trade Secrets Act ("MUTSA") (Count IV), breach of contract by Elgin (Count V), and breach of fiduciary duty by Elgin (Count VI) (ECF No. 1).  After learning of additional instances of alleged misconduct and disclosure of their trade secrets and confidential information by Defendants and M&K Chemical Engineering Consultants, Inc. ("M&K"), Plaintiffs filed the instant motion seeking leave to file an amended complaint, adding M&K as a defendant and asserting the additional instances of misconduct and disclosures by Defendants and M&K.  One of the new allegations asserted in the amended complaint is that Defendants used Roeslein's confidential information and trade secrets provided by M&K to assist in the construction of a facility in New Mexico, and M&K obtained this information while performing engineering services for Roeslein at the Ruckman, Missouri facility.  In opposition, Meyer Defendants focus on the alleged futility of Plaintiffs' proposed amended complaint, asserting that Plaintiffs, even with the proposed amendments, still cannot establish the requisite elements to establish a misappropriation of trade secrets.

## II.   First Amended Complaint (ECF No. 41-1)

For purposes of the motions now before the Court, the record set forth in the First Amended Complaint (ECF No. 41-1) establishes the following facts:[2]

---

[2] For purposes of ruling on the motions, the Court accepts as true the allegations in the amended complaint and construes the amended complaint in Plaintiffs' favor.  See, e.g., Warth v. Seldin, 422 U.S. 490, 501 (1975); Cole v. Homier Dist. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010).

### A. Elgin's Employment with Plaintiffs

Plaintiffs develop and design energy production facilities that use agricultural and industrial wastes to create green renewable alternate energy solutions to help landowners promote ecological and economic sustainability and restore native prairie lands.  (ECF No. 41-1, Exh A, First Amended Complaint at ¶¶ 1-2)  RAE is in the business of renewable energy through a process using anaerobic digestion to convert livestock waste into natural gas.  (Id. at ¶ 34)  Roeslein is an engineering company that designs and builds modular and unitized systems.  (Id. at ¶ 28)  Roeslein and RAE are affiliated entities with common ownership.  (Id. at ¶ 29)  Plaintiffs, with their partner, Murphy-Brown of Missouri, a wholly owned subsidiary of Smithfield, Inc., invested significant financial resources to refine and perfect these processes, including the construction of the Ruckman facility located in northern Missouri.  (Id. at ¶¶ 35-36)

On June 7, 2010, Roeslein hired Elgin as the Director of the Process & Energy Business Unit.  Elgin's job duties included assisting in the development of renewable energy facilities, new technology methods, and energy solutions, including heading Plaintiffs' efforts to develop a process for converting animal waste to energy.  (Id. at ¶¶ 4, 29-30)  During his employment with Roeslein, Elgin became RAE's Director and Business Unit Leader, and his job duties and responsibilities remained the same.  In 2014, Elgin became Vice President of Roeslein Alternative Energy of Missouri, LLC ("RAEM"), an affiliated entity of RAE.  RAE is the sole member of RAEM.  (Id. at ¶¶ 5, 32-33)

During his employment, Elgin had confidential access to proprietary and scientific and technical information regarding Plaintiffs' energy solutions, restoration methodologies, and finances.  (Id. at ¶ 42)  During the construction of the Ruckman facility, Elgin received confidential, proprietary and trade secret information relating to the operations of that facility.  In

addition to the design of the facility, Elgin also had confidential access to the scientific means to manage anaerobic digestion to create biogas, the profit analysis, the equipment analysis, the vendor proposals, and the results of testing, including analysis of biogas output under various conditions.  (Id. at ¶ 43)  Plaintiffs assert that their trade secret information was protected from improper disclosure or unauthorized use in a reasonable manner by limited distribution and access, confidentiality agreements and policies, and password protections.  (Id. at ¶ 44)

On June 7, 2010, Elgin entered into an Employment Agreement with Roeslein that included a Confidential Information and Ownership of Inventions provision.  (Id. at ¶¶ 37, 39) The Confidential Information provision provides as follows:

> Employee will not, except as authorized by [Roeslein], during and for a period of five (5) years after the termination of [Elgin's] employment with [Roeslein], directly or indirectly, use for himself or others, or disclose, communicate, divulge, furnish to, or convey to any other person, firm, or corporation, any secret or confidential information, knowledge or data of [Roeslein] or that of third parties obtained by [Elgin] during the period of his employment with [Roeslein] (hereinafter, "Confidential Information").
>
> Confidential information includes, without limitation, the following:
>
> * Secret or confidential matters of a technical nature such as, but not limited to, methods, know-how, formulae, compositions, processes, discoveries, machines, inventions, computer programs, and similar items or research projects involving such items,
>
> * Secret or confidential matters of a business nature such as, but not limited to, information about costs, purchasing profits, market, sales or lists of customers,
>
> * Secret or confidential matters pertaining to future developments such as, but not limited to, research and development or future marketing or merchandising, and
>
> * Secret or confidential matters pertaining to the unitizing or pre-assembly of systems.
>
> [Roeslein] may notify any person, firm, or corporation employing [Elgin] or evidencing an intention to employ [Elgin] as to the existence and provision of this Agreement.

> [Elgin] understands and acknowledges that the Inventions and the
> Confidential Information are unique and that the disclosure or use of such
> Inventions and Confidential Information other than in furtherance of the
> business of [Roeslein] would reasonably be expected to result in irreparable
> harm to [Roeslein]; and that in addition to whatever other remedies
> [Roeslein] and/or its successors or assigns may have at law or in equity,
> [Elgin] specifically covenants and agrees that, in the event of default under or
> breach of this Agreement, [Roeslein] and/or its successors and assigns shall
> be entitled to apply to any court of competent jurisdiction to enjoin any
> breach, threatened or actual, of the foregoing covenants and promises by
> [Elgin], and/or to sue to obtain damages for default under or any breach of
> this Agreement, [Elgin] hereby agrees to pay all costs of enforcement and
> collection of any and all remedies and damages under this Agreement,
> including reasonable attorneys' fees.

(Id. at ¶ 38, ECF No. 48-1, Employment Agreement: Confidential Information at 6)

The Ownership of Inventions provision provides as follows:

> Any Invention disclosed by [Elgin] to a third person or described in a
> patent application filed by [Elgin], or on [Elgin's] behalf, within six (6)
> months after the date of termination of [Elgin's] employment with
> [Roeslein] shall be presumed to have been conceived or made by [Elgin]
> during the period of [Elgin's] employment with [RAE].

(Id. at ¶ 39; Employment Agreement: Ownership of Inventions at 6)

Plaintiffs allege that they shared the following trade secrets, or protectable proprietary information, with Elgin during his employment:

- process technology, such as details and information regarding how Plaintiffs' facilities combine biological and mechanical energy conversion to create natural biogas in a significantly more efficient process than conventional processing plants and different from the parasitic methods used in conventional anaerobic digesters;

- facilities overview information, such as studies of the proprietary modeling process for future plants and competitively sensitive information relating to hog feeding and operations, environmental impact, revenue, risk, profitability and other information used to determine plant viability; and

- financial information, such as financial impact of the various proprietary processes used by Plaintiffs in producing natural gas and fertilizer.

(collectively referred to as Plaintiffs' "trade secret information"). (Id. at ¶ 40)

### B. Elgin's Employment with JSME

On January 12, 2015, Elgin left his employment at Roeslein and began working for JSME as Vice-President, Chief Financial Officer, Secretary, and Treasurer.  (Id. at ¶¶ 6, 18, 47, 49) Elgin, along with Jason and Stanley Meyer, formed EM Bioenergy using Plaintiffs' confidential and trade secret information and also shared this information with JSME, EMB, M&K, Kolb Grading, Elgin-Kolb Bioenergy of New Mexico, Stern Brothers & Co., and Smithfield, Inc.  (Id. at ¶¶ 17, 50, 53)  Plaintiffs allege that Kolb Grading and Elgin-Kolb Bioenergy used Plaintiffs' trade secret information to construct the facility near Roswell, New Mexico, and to obtain financing for the project, and that the facility uses technology developed by Plaintiffs.  (Id. at ¶¶ 54-56)

In May 2016, Elgin and JSME shared Plaintiffs' trade secret information with Smithfield, Inc., in an effort to secure a supply of livestock waste for use in other proposed projects.  (Id. at ¶ 57)

### C. Hiring of M&K

M&K is an engineering company with expertise in chemical process development.  (Id. at ¶ 64)  Stanley Meyer is the principal owner of M&K.  Jason Meyer is the President of M&K and also the director, employee and/or officer of JSME and EMB.  (Id. at ¶¶ 65-66)  M&K, JSME, and EMB share common ownership, employees, and/or principals.  (Id. at ¶22)

On October 15, 2014, RAE hired M&K to perform engineering services and processes for RAEM and to assist in the design and the construction of the Ruckman facility.  (Id. at ¶¶ 67, 72)  M&K and RAE entered into a Master Services Agreement and Confidentiality and Nondisclosure Agreement ("Masters Services Agreement") on that date.  (Id. at ¶¶ 69, 71, Exhs

C and D)  The Masters Services Agreement included a Creation of Intellectual Property

provision.  (Id. at ¶ 69)  The Creation of Intellectual Property provision provides as follows:

> **Creation of Intellectual Property**.  [M&K's] original creation of, and all worldwide rights, titles and interests in all copyrights and other intellectual properties in and to, materials, documents and other written work, contracts, presentations, prints, designs, drawings and other work created, developed and/or modified by [M&K] in connection with this Agreement (collectively, the "Work Product"), shall be governed by this Agreement and the applicable Task Order.  Unless otherwise set forth in a Task Order or agreed in writing between the parties hereto, all Work Product is and shall be a "work for hire" and shall be the property of RAE.

(Id. at ¶ 69, Exh C at ¶ 11)

The Masters Services Agreement also included Confidentiality and Non-Use and

Preservation of Confidentiality provisions.  (Id. at ¶¶ 70-71)  The Confidentiality and

Nondisclosure Agreement's Confidentiality and Non-Use provision provides as follows:

> Except as otherwise permitted by this Agreement, all Confidential Information shall be (a) maintained by Recipient in confidence, (b) will not be disclosed, transferred or otherwise made available by Recipient to any person, firm or organization, and (c) will be used by Recipient only in conjunction with the Purpose.

(Id. at ¶ 71, Exh D at ¶ 2)  The Confidentiality and Nondisclosure Agreement's Non-Use

provision also provides that:  "Recipient agrees to use the same degree of care, but not less than

reasonable care, to safeguard the confidentiality of the Confidential Information as it uses to

safeguard the confidentiality of its own confidential and proprietary information."

(Id. at ¶ 71, Exh D at ¶ 4)

Plaintiffs allege that while constructing the Ruckman facility, M&K received confidential

access to their trade secret information, including valuable scientific and technical information

regarding Plaintiffs' energy solutions, and engineering and restoration methodologies, such as

design of the Ruckman facility, the scientific means to manage anaerobic digestion to create

biogas and profit analysis, equipment analysis used in the production of biogas, a comparison of vendor proposals, and the facility testing results.  (Id. at ¶ 74)  Plaintiffs contend that all of their trade secret information shared with M&K throughout the duration of the Master Services and Confidentiality and Nondisclosure Agreements fell within the scope of the agreed upon confidentiality obligations, and if M&K had not agreed to these confidentiality obligations, Plaintiffs would not have shared their trade secret information.  (Id. at ¶¶ 75-76)

### D.  Patent Application and Ownership

On June 5, 2015, JSME filed a patent application with the United States Patent & Trademark Office, assigned Pub. No. US 2016/0096761 A1 and application number 14/731,320 ("patent application").  The application is entitled, "Systems and Methods for Processing Organic Compounds."  Plaintiffs contend the patent application contains Plaintiffs' trade secret information.[3]  (Id. at ¶¶ 56, 78, Exh A)  The patent application sets forth a system and method for processing manure and other organic compounds in anaerobic vessels with improved odor control.  (Id. at ¶ 77)  The patent application states it supersedes a provisional patent application filed on October 3, 2014, and lists Stanley Meyer and Jason Scott Meyer as the inventors of the process claimed in the application.  (Id. at ¶¶ 59-60, Exh A)  Defendants also filed a Patent Cooperation Treaty Application on April 7, 2016, claiming priority to an earlier provisional patent application, demonstrating their intention to expand the scope of their patent rights, if granted, to countries around the world.  (Id. at ¶ 79)

Plaintiffs assert that a review of the published patent application shows that their research and development, products, processes, confidential and proprietary information, and inventions

---

[3] The patent application is attached as Exhibit A to the First Amended Complaint.  (Id.)

were disclosed and/or claimed in the patent application by JSME, including ownership of the inventions disclosed or claimed in the patent application. (Id. at ¶¶ 82-83)

Plaintiffs allege that Elgin shared their trade secret information with JSME for the purpose of using this information in the filed patent applications, and request that Defendants be enjoined from revealing, providing, disclosing, and/or using their trade secret information in the development of such process technology. (Id. at ¶¶ 61-62) Plaintiffs allege that Rudolph Roeslein, co-founder and CEO of Roeslein and RAE, is the true inventor of the inventions disclosed and claimed in the patent application. Accordingly, Plaintiffs assert that they are the true owners of the patent application. (Id. at ¶ 90)

Plaintiffs further allege that Defendants might have filed other patent applications, continuation applications, or continuation-in-part applications, claiming Plaintiffs' intellectual property. (Id. at ¶ 91) Plaintiffs allege that Defendants have continued to prosecute the patent application, and that the assigned USPTO examiner rejected Claims 1-35 in a Final Office Action on June 29, 2017, resulting in additional irreparable harm. (Id. at ¶¶ 92-94) Plaintiffs assert that their ability to monetize the patent rights has been permanently decreased, in that they may be unable to license the patent to others in the industry, or enforce the patent in litigation, as a result of Defendants' improper actions in filing and prosecuting the patent application, and the improper claims of patent ownership. (Id. at ¶ 98) Plaintiffs assert that if Defendants are not enjoined from their continued improper actions, and the patent application is not assigned to Plaintiffs, the value of the patent will be permanently decreased. (Id. at ¶ 99)

## III.    Legal Standards

Parties may be added as a defendant if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction,

occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Rule 8(a)(2), Fed. R. Civ. P., provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. Neitzke v. Williams, 490 U.S. 319, 327 (1989). Therefore, the inquiry for purposes of the instant motion is whether the claims in the proposed amended complaint would survive a motion to dismiss pursuant to Rule 12(b)(6).

Rule 15 of the Federal Rules of Civil procedure provides that, unless a party seeks to amend within twenty-one days of serving a pleading, that party "may amend its pleading only with the opposing party's written consent or the court's leave." "[I]t is well settled that leave to amend should be freely given when justice so requires." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994); Fed.R.Civ.P. 15(a). The granting of a motion to amend is vested in the sound discretion of the trial court. White Consol. Indus., Inc. v. Waterhouse, 158 F.R.D. 429, 434 (D. Minn. 1994) (citing Ryan v. Sargent, 969 F.2d 638, 641 (8th Cir. 1992)). The justifications for denying a motion to amend are limited to "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Doe v. Cassel, 403 F.3d 986,

991 (8th Cir. 2005); see also Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008) (a court may properly deny a motion to amend a pleading if the amendment would be futile).

An amendment is futile if the revised claims would not survive a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. See Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d 778, 782 (8th Cir. 2008) (denial of leave to amend as futile means district court concluded the amended complaint could not withstand Rule 12(b)(6) motion). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the court assumes that the factual allegations in the complaint are true, and construes them in favor of the plaintiff. Neitzke, 490 U.S. at 326-27; see also Taxi Connection v. Dakota, Minnesota & E.R.R. Corp., 513 F.3d 823, 825-26 (8th Cir. 2008).

"While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice,[4] matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 & n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, §1357 (3d ed. 2004)).

---

[4] Under Rule 201(b), the Court can take judicial notice of facts not subject to reasonable dispute in that they are "generally known within the territorial jurisdiction of the trial court." See generally, Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 648 (7th Cir. 2011) (recognizing the authority of a court to take judicial notice of government websites.").

**IV.**     **Motion for Leave to File Their First Amended Complaint** (ECF No. 40)

In their Motion for Leave to File the First Amended Complaint (ECF No. 40), Plaintiffs seek to amend their complaint to allege additional instances of misconduct and disclosure of their trade secrets and confidential information by Defendants, arising out of the same conduct and transactions set forth in Plaintiffs' Complaint, and to add M&K as a defendant. Plaintiffs argue that justice requires that they be permitted to amend their complaint as they have not unduly delayed seeking leave to amend, because this case is in the early stage of litigation with no case management order establishing a deadline for amending pleadings, and no discovery completed; so allowing Plaintiffs to file an amended complaint would not be prejudicial to Defendants.

In particular, Plaintiffs want to amend the complaint to add allegations related to another project located near Roswell, New Mexico. Plaintiffs contend that Defendants used Plaintiffs' confidential information and trade secrets on the New Mexico Project, for a company named Kolb-Meyer Bioenergy, NMI, LLC ("Kolb-Meyer"), which is affiliated with Kolb Grading. Plaintiffs hired M&K to perform engineering services for the Ruckman facility. M&K's founder and owner is Stanley Meyer, an inventor listed on the patent application at issue in this case. Stanley Meyer is the father of Jason Meyer, president of JSME. Both Meyers worked on the design and construction of Plaintiffs' Ruckman facility. Plaintiffs also assert that both Meyers are principals, officers, owners, and/or employees of JSME, EMB, and M&K. Plaintiffs make this assertion based on a state lawsuit filed by Kolb-Meyer against JSME, for breach of contract related to the New Mexico facility. Plaintiffs contend that this lawsuit connects Plaintiffs' Ruckman, Missouri, project, M&K, JSME, and Elgin to the New Mexico Project.

In their joint Memorandum of Law in Opposition (ECF No. 54), Defendants argue that allowing Plaintiffs to file their First Amended Complaint would be an exercise in futility,

arguing that it fails to cure the defects of the original Complaint.  First, Defendants contend that

Plaintiffs fail to allege any acts of misappropriation, occurring on or after the DSTA enactment

date, May 11, 2016,[5] other than conclusory allegations of continuing use and disclosure.

Defendants assert that Plaintiffs allege only three acts of misappropriation:  (1) using trade

secrets to assist Kolb-Meyer; (2) sharing trade secrets with Smithfield, Inc. in May 2016, and (3)

including trade secrets in JSME's patent application.  Next, Defendants argue that the amended

complaint fails to establish the existence of any protectable trade secrets even though Plaintiffs

assert six categories of information relating to the Ruckman facility, because that information is

ascertainable through non-confidential disclosures and other publicly available information,

including press releases, tutorials, aerial photographs**,** articles, numerous websites, and videos

published by RAE and others.  Defendants also contend that Plaintiffs failed to take reasonable

efforts to protect their alleged trade secrets.  Similarly, Defendants contend that RAE does not

treat their trade secret information, or information about the Ruckman facility, as confidential.

As to Plaintiffs' patent ownership claims, Defendants argue Plaintiffs have failed to establish

standing inasmuch as Rudolph Roeslein is alleged to be the true owner, and there are only

conclusory allegations of Elgin's contribution to the subject matter of JSME's patent application.

Regarding the constructive trust claim, Defendants argue that a constructive trust is not a

cognizable cause of action.  As to their new claims against M&K, Defendants argue that

Plaintiffs lack standing to bring any claims against M&K, because Roeslein Alternative Energy

of Missouri, LLC ("RAEM"), not Plaintiffs, entered into the Master Services Agreement

---

[5] This is the date Congress enacted the DSTA, and to state a plausible claim for relief, a plaintiff must sufficiently allege a prohibited act occurring after May 11, 2016.  <u>Adams Arms, LLC v. United Weapon Sys., Inc.</u>, 2016 WL 5391394, at *6 (M.D. Fla. Sept. 27, 2016).

("MSA") with M&K.  Lastly, Defendants contend that the amended complaint fails to establish that M&K had any obligation to assign any inventions to Plaintiffs.

In their Reply (ECF No. 58), Plaintiffs incorporate the arguments from their briefs in opposition (ECF Nos. 34 and 53) to the pending motions to dismiss.  Plaintiffs argue that Defendants' futility argument fails because Defendants are asking the Court to make factual and legal findings and to apply a summary judgment standard to a Rule 12 motion.  Plaintiffs contend that they have adequately pleaded trade secret claims under the DSTA and the MUSTA, and have identified their trade secrets with sufficient particularity by putting forth general categories of their trade secrets, including their process technology (the conversion of animal waste to biogas), facilities overview, and financial information.  Plaintiffs contend that that they asserted a continuing misappropriation claim starting as early as October 3, 2014, and continuing to this day.  Thus, although the misappropriation began before the enactment of the DSTA, it continued after the enactment.  Plaintiffs also argue that, although some information relating to their trade secrets, such as a general description of anaerobic digestion, is publicly available on Roeslein's websites, the trade secrets are still protected.  Plaintiffs further argue that they alleged sufficient facts to show reasonable efforts to protect their trade secrets, and the determination whether the steps taken were reasonable is an inquiry more appropriate at the summary judgment stage than a motion to dismiss.  Plaintiffs allege specific efforts to protect the secrecy of their trade secrets, including limited distribution and access, employee confidentiality policies and agreements, and password protections.  Plaintiffs ask the Court not to consider the websites cited by Defendants, noting that the judges in our District have been unwilling to take judicial notice of non-governmental websites to short cut discovery and prematurely reach substantive, factual issues.  As to the declaratory judgment of patent ownership, Plaintiffs argue that Elgin

improperly passed confidential information he learned while employed by them to Elgin's new employer, JSME. Plaintiffs contend that JSME then used this information to prosecute a patent application, and thus these allegations are sufficient to support this claim. Plaintiffs argue they have standing because they allege that they are the true owners of the patent application, and the Court must accept these allegations as true at this stage. Plaintiffs argue that Missouri law recognizes claims for the imposition of constructive trust over specifically identified property, in this case, the patent application.

**V.   Discussion**

**A.  Misappropriation of Trade Secrets under Defend Trade Secrets Act ("DSTA")**

Count I of the amended complaint, Plaintiffs allege a misappropriation of their trade secrets under the DSTA. Plaintiffs pleaded that their trade secret information includes their confidential processes, business information, and facilities relating to the products and/or the services, and that their trade secret information has been released or disclosed by Defendants without their consent or authorization. (ECF No. 41-1, Exh A, First Amended Complaint at ¶¶ 103-04) Plaintiffs further claim that Elgin and M&K knew or had reason to know that their knowledge of Plaintiffs' trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy. (Id. at ¶¶ 105-06) Plaintiffs further pleaded that Plaintiffs derived significant economic value from their trade secret information not being generally known to other individuals or companies in the industry who could derive significant economic value from the disclosure or use of Plaintiffs' information. (Id. at ¶ 102) Plaintiffs allege that JSME and EMB knew or had reason to know that their knowledge of Plaintiffs' trade secrets was derived through Elgin and M&K, and both owed a separate duty to Plaintiffs to maintain their trade secrets. (Id. at ¶ 107) Plaintiffs pleaded that Defendants' misappropriation of their trade secret

information is continuing and ongoing by the continued prosecution of the patent application and the construction of the Roswell facility, and as a result of their misappropriation, Plaintiffs will suffer actual losses and irreparable harm if Defendants' misconduct is not enjoined.  (Id. at ¶¶ 54-60, 92-93,110-11, 115, 117, 119)

On May 11, 2016,[6] Congress enacted the DSTA creating a new private civil cause of action in favor of the "owner of a trade secret that is misappropriated … if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." Pub. L. No. 114-153, 130 Stat. 376, 18 U.S.C. § 1836(b)(1)(2016); see Molon Motor & Coil Corp. v. Nidec Motor Corp., 2017 WL 1954531, at *1 (May 11, 2017) (the court held that "[t]he DSTA allows '[a]n owner of a trade secret that is misappropriated … [to] bring a civil action … if the trade secret is related to a product or service used in, or intended to use in, interstate or foreign commerce'18 U.S.C. § 1836(b)(1).").  The DSTA by its own terms applies only to an act of trade secret misappropriation that "occurs on after the date of the enactment of this Act."  Pub. L. No. 114-153, § 2(e), 18 U.S.C. § 1836.  Because the DSTA became effective on May 11,

---

[6] Given that the DSTA's enactment date is May 11, 2016, there is little case law in this district addressing its application.  See Siteone Landscape Supply, LLC v. Beckham, 4:17 cv 2898JAR, 2018 WL 324238, *1 (E.D. Mo. Jan. 4, 2018(mentioning DSTA as a claim in order denying a temporary restraining order ("TRO")); Aerote, Inc. v. Joel T. Murphy, et. al., 4:17 cv 2469HEA, 2017WL4617109 (E.D. Mo. Oct 16, 2017) (mentioning DSTA as a claim in order denying a TRO and a preliminary injunction); Flowshare, LLC v. TNS, US, LLC, 4:16 cv 300JAR, 2017 WL 3174321, at *5 (E.D. Mo. July 26, 2017) (denying motion to dismiss as directed to DSTA); Express Scripts, Inc. v. Lavin, 4:17 cv 1423HEA, 2017 WL 290325, at *6 (E.D. Mo. July 7, 2017) (briefly discussing DSTA claim in context of a motion for TRO); Schlafly Revocable Trust v. Cori, 4:16 cv 1631JAR, 2016 WL 11133, at *1-2 (Nov. 9, 2016) (briefly addressing DSTA in context of a motion for TRO); Id., 2017WL1374743, at *6-7 (E.D. Mo. April 17, 2017) (granting motion for leave to file an amended complaint and denying motion for second TRO).  The Eighth Circuit Court of Appeal has not yet addressed the DSTA.

2016, a plaintiff states a plausible claim for relief only if plaintiff "sufficiently alleges a prohibited 'act' occurring after May 11, 2016." <u>Adams Arms</u>, 2016 WL 5391394, at *6.

The DSTA defines a trade secret broadly as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if – (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C. § 1839(3).

A misappropriation occurs when: (1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means; (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent; or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent. <u>See</u> <u>Mission Measurement Corp. v. Blackbaud, Inc.</u>, 2016 WL 6277496, at *4 (N.D. Ill. Oct. 27, 2016) (citing 18 U.S.C. § 1839(5)).

To prevail on a trade secrets claim, Plaintiffs must show that (1) they took reasonable measures to keep the information secret, (2) the information derives independent economic value from not being generally known or readily ascertainable, and (3) the information was misappropriated by Defendants. <u>Strategic Directions Grp., Inc. v. Bristol-Myers Squibb Co.</u>, 293 F.3d 1062, 1064-65 (8th Cir. 2002). "Information that is public knowledge or that is generally

known in an industry cannot be a trade secret." Ruckelhaus v. Monsanto Co., 467 U.S. 986, 1002 (1984) (internal citation omitted). "Though the existence of a trade secret is a fact-intensive inquiry, it is ultimately a question of law determined by the court." Avidair Helicopter Supply, Inc. v. Rolls-Royce Corp., 663 F.3d 966, 971 (8th Cir. 2011).

Although broad and general, the Court finds Plaintiffs have stated a viable claim under the DSTA at this pleading stage, and their allegations are at least minimally sound under 12(b)(6). Plaintiffs have properly asserted a continued and ongoing misappropriation claim starting as early as October 3, 2014, with the filing of the provisional patent application, and continuing beyond the enactment of the DSTA, by the continued prosecution of the patent application by Defendants. Likewise, Plaintiffs pleaded that Defendants used their trade secret information to facilitate in the construction of the New Mexico Project and then continued by using technology at the facility developed by Plaintiffs. Accordingly, Plaintiffs have adequately pleaded an ongoing misappropriation of their trade secrets at this stage of the case. Plaintiffs pleaded their trade secrets with sufficient particularity by putting forth general categories of their trade secrets, including their process technology (the conversion of animal waste to biogas), facilities overview information, and finances. Plaintiffs further pleaded such information derived economic value from not being generally known to, and not being readily ascertainable by, other persons.

None of the cases from within the Eighth Circuit expressly delineate a particularity requirement for the pleading stage of a trade secrets case. In Young Dental Mfg. Co. v. Q3 Special Prods., Inc., 891 F. Supp. 1345, 1349-52 (E.D. Mo. 1995), our Court suggested it would be more prudent to wait until the summary judgment stage to evaluate the sufficiency of the particularity of Plaintiff's claimed trade secrets. See also EnviroPAK Corp. v. Zeninity Capital,

LLC, 2015 WL 331807, at *4 (E.D. Mo. Jan. 23, 2015).  As such, Plaintiffs have pleaded sufficient facts to establish the existence of trade secrets and that Plaintiffs took reasonable steps to protect their trade secrets.  A determination of whether those steps were actually reasonable to protect Plaintiffs' trade secret information is premature at this point.  See Flowshare, 2017 WL 3174321, at *5.

Defendants attached a number of publicly available documents and websites, arguing that Plaintiffs have publicly disclosed and publicized their alleged trade secret information.  The undersigned declines to take judicial notice of the requested websites and documents at this stage of the litigation.  See e.g., K.T. v. Culver-Stockton College, 2016 WL 4243965, at *11 n.4 (Aug. 11, 2016) (noting that financial aid information and sexual assault prevention and response information from a college's website is not subject to judicial notice); Cynergy Ergonomics v. Ergonomic Partners, Inc., 2008 WL 2064967, at *2 (E.D. Mo. May 14, 2008) (refusing to consider websites outside of the pleadings at the motion to dismiss stage and declining "to take judicial notice of any other facts because they are neither 'generally known' nor come from sources 'whose accuracy cannot reasonably be questioned.'") (citing Fed.R.Civ.P. 201(b)).  Cf. Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc., 327 F.Supp.2d 1032, 1042 n.4 (E.D. Mo. 2004) (taking judicial notice of a defendant's website when determining personal jurisdiction where that the website was the only alleged  contact with the forum).  The Court has "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion."  Stahl v. U.S. Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003).

Finally, any particularity in pleading Defendants seek regarding Plaintiffs' trade secret claims may be addressed through the discovery process in this litigation and ultimately

challenged at the summary judgment stage of this case. Therefore, the Court will grant Plaintiffs leave to file as to this claim of their amended complaint.

### B. Declaratory Judgment of Ownership of Defendants' Patent Application

In Count II of the amended complaint, Plaintiffs ask the Court to allow them to control the remaining prosecution of the patent application as the true and rightful owners, or alternatively, declare and order that Defendants assign all of their rights or ownership interest in the patent application to them. (ECF No. 41-1, Exh A, First Amended Complaint at ¶¶ 90, 116) In support, Plaintiffs allege that Elgin and M&K disclosed Plaintiffs' intellectual property to Stanley and Jayson Meyer who used such information in the patent application.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, …, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[I]t is well settled that the declaratory judgment statute is strictly remedial in nature and does not provide a separate basis for subject matter jurisdiction." First Fed. Sav. & Loan Ass'n of Harrison, Ark. v. Anderson, 681 F.2d 528, 533 (8th Cir. 1982). Federal district courts can grant declaratory relief in "a case of actual controversy within its jurisdiction" but "an independent source of jurisdiction, such as diversity or federal question jurisdiction, must exist before a federal court can order declaratory relief." Midland Farms, LLC v. United States Dep't of Agric., 35 F. Supp. 3d 1056, 1065-66 (D.S.D. 2014) ( internal quotation marks and citations omitted).

Plaintiffs correctly argue that the factual allegations in the amended complaint must be taken as true for the purposes of a Rule 12(b)(6) motion to dismiss. Likewise, for purposes of ruling on the motion for leave to amend and determining standing, the Court accepts as true the allegations

in the amended complaint and construes the amended complaint in Plaintiffs' favor.  See e.g., Warth, 422 U.S. at 501; Cole, 599 F.3d at 861.  The undersigned finds that Plaintiffs have standing to assert this claim because Plaintiffs are arguing that they are the true owners of the patent application at issue and, at this stage of the litigation, the Court must accept as true the factual allegations.  Id.  At this time, Plaintiffs have sufficiently alleged that their trade secrets appear in the pending patent application, and the prior provisional application, and Defendants allegedly converted the patent application to their own use.  (ECF No. 41-1, Exh A, First Amended Complaint at ¶¶ 61-63, 77-86, 111, 116)  Accordingly, Plaintiffs have sufficiently pleaded facts in the amended complaint to support their claim for declaratory judgment of patent ownership as the rightful owner of the patent application, and the Court will grant Plaintiffs' leave to file this claim.

## C.  Constructive Trust over Defendants' Patent Application

In Count III of the amended complaint, Plaintiffs seek entry of a constructive trust over the patent application.  "A constructive trust is a method by which a court exercises its equitable powers to remedy a situation where a party has been wrongfully deprived of some right, title, benefit or interest in property as a result of fraud or in violation of confidence or faith reposed in another."  Fix v. Fix, 847 S.W.2d 762, 765 (Mo. banc 1993) (quotation omitted).  "Although not technically a trust, a 'constructive trust' is merely the machinery a court of equity uses as a remedy to right a past wrong."  Nelson v. Emmert, 105 S.W.3d 563, 565 (Mo. Ct. App. 2003)(citing March v. Gerstenschlager, 436 S.W.2d 6, 8 (Mo. 1969)).  Thus, in an appropriate case, a court might impose a constructive trust as a remedy for a breach of fiduciary duty or for fraud.  See, e.g., John R. Boyce Family Trust v. Snyder, 128 S.W.3d 630, 638 (Mo. Ct. App.

2004) ("A constructive trust is a device employed by a court of equity to provide a remedy in cases of actual or constructive fraud or unjust enrichment.") (citation omitted).

Plaintiffs may seek a constructive trust as part of their prayer for relief in another claim, but this remedy cannot stand as a separate cause of action. Accordingly, the Court finds allowing Plaintiffs to file this claim for constructive trust would be futile and denies Plaintiffs leave to file this claim.

### D. Misappropriation of Trade Secrets - Missouri Uniform Trade Secrets Act ("MUTSA")

In Count IV, Plaintiffs advance a claim under the MUTSA. The arguments presented by Plaintiffs and Defendants regarding the allegations under the MUTSA are similar if not identical to their arguments under the DSTA.[7] Accordingly, for the reasons discussed in the earlier section, the Court finds Plaintiffs have stated a viable claim under the MUTSA at this pleading stage, and their allegations are at least minimally sound under 12(b)(6), and will grant Plaintiffs leave to file this claim.

### E. Breach of Contract by Elgin

Before withdrawing, Elgin's counsel withdrew his Motion for More Definite Statement directed to Count V. See ECF No. 39, at *5 (July 21, 2017). Accordingly, the Court will grant Plaintiffs leave to file the breach of contract claim.

### F. Breach of Fiduciary Duty by Elgin

In Count VI of the amended complaint, Plaintiffs allege that Elgin, in his capacity as a director for Plaintiffs and a vice president of RAEM, owed Plaintiffs a fiduciary duty. That duty included a duty to act and give advice for Plaintiffs' benefit, to act in good faith and in Plaintiffs'

---

[7] A difference is the DSTA enactment date of May 11, 2016. 18 U.S.C. § 1836.

best interests, to exercise independent professional judgment, to represent no adverse interests, and to make full disclosure to Plaintiffs of all known information that was material to Plaintiffs' affairs. (ECF No. 41-1, Exh A, First Amended Complaint at ¶ 149) Plaintiffs further allege that their trade secret information was acquired by Elgin under the auspices of trust, a promise of non-disclosure, in the context of the parties' confidential relationship, and that Elgin allegedly disclosed the trade secret information causing significant negative financial impact to Plaintiffs' businesses. (Id. at ¶¶ 150, 152-53)

Whether Plaintiffs' breach of fiduciary duty claim is preempted by their trade secrets claim depends on whether Plaintiffs are found to possess protectable trade secrets. By virtue of Missouri Revised Statute Section 417.463(1), this claim is derivative of a claim of misappropriation of trade secrets. Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg. & Consulting, LLC, 2009 WL 3523986, at *5 (E.D. Mo. Oct. 26, 2009). MUTSA "displace[s] conflicting tort, restitutionary, and other laws … providing civil remedies for misappropriation of a trade secret." Mo. Ann. Stat. Section 417.463. "[C]ommon-law claims are preempted by MUTSA if they are based on facts related to the misappropriation of trade secrets claim." Reliant Care Mgmt., Co., Inc. v. Health Sys., Inc., 2011 WL 4369371, at *1 (E.D. Mo. Sept. 19, 2011).

The basis for Plaintiffs' breach of fiduciary duty claim appears to be Elgin's use and misappropriation of Plaintiffs' protected information in breach of his duties and obligations to Plaintiffs. These claims are based upon the same facts that form the basis of Plaintiffs' MUTSA claims. "[C]laims that are based upon the same set of operative facts as a MUTSA claim will be preempted." See Secure Energy, Inc. v. Coal Synthetics, LLC, 2010 WL 1691454, at *2 (E.D. Mo. April 27, 2010). However, "[f]or preemption to be triggered, the property that has been stolen/misappropriated must be a trade secret: otherwise, the Trade Secret Act has no

application." Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC, 757 F. Supp.2d 904, 917 (E.D. Mo. 2010) ("Put it another way, MUTSA will not preempt a claim if the information at issue does not rise to the level of a statutorily-defined trade secret."); Enviropak, 2015 WL 331807, at *5.

The Court finds that Plaintiffs have stated a viable claim of breach of fiduciary duty by Elgin at this pleading stage. It would be premature to find this claim preempted at this time. The Court has not determined whether Plaintiffs' alleged trade secret information rises to the level of statutorily-defined trade secrets. The Court will grant Plaintiffs leave to file this claim.

## VI.    Conclusion

There is no case management scheduling order or trial date set in this action, and so amendment of the complaint will not disturb any schedule set by this Court. During the course of litigation, Plaintiffs obtained new evidence they contend support their additional claims. Further, because this matter has not reached an advanced stage of litigation, and the parties have not conducted any discovery, Defendants will not be prejudiced by the amendment. Finally, the Court finds that amendment will not be futile because the amended complaint complies with the requirements of Rule 12.

Rule 15(a)(2) explicitly states that a court should freely give leave when justice so requires. Since this action is at the pleadings stage, Plaintiffs have alleged sufficient facts to demonstrate that the proposed amended complaint is not futile. Here, the Court holds that Plaintiffs' motion for leave to amend their complaint should be granted because this request was not made in bad faith or with no undue delay, and the proposed amendments are not futile. Defendants' motions to dismiss directed to the original complaint will be denied as moot. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File Their Amended Complaint (ECF No. 40) is GRANTED IN PART and DENIED IN PART as follows:

1. The motion is GRANTED as to Counts I-II and Counts IV-VI, and the motion is DENIED as to Count III.

2. Plaintiffs' claim for a constructive trust is DISMISSED.

3. Plaintiffs shall file a First Amended Complaint that is consistent with this Memorandum and Order on or before **March 19, 2018**.

**IT IS FURTHER ORDERED** that this Court will issue an appropriate order of Partial Dismissal in accordance with this Memorandum and Order after Plaintiffs' First Amended Complaint is filed.

**IT IS FURTHER ORDERED** that Defendant Elgin's Motion to Dismiss and for More Definite Statement (ECF No. 29), and Meyer Defendants' Motion to Dismiss the Complaint (ECF No. 45) are DENIED AS MOOT.

**IT IS FURTHER ORDERED** that Plaintiffs' Request to Take Judicial Notice (ECF No. 71) is DENIED AS MOOT.

/s/ ***John M. Bodenhausen***
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of March, 2018.